# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

JONATHAN L. PATTON,

    Plaintiff,

v.

CORRECTIONS OFFICER ROWELL;
CORRECTIONS OFFICER FARNSWORTH;
WARDEN TOM GRAMIAK; and UNIT
MANAGER NATHAN BROOKS,

    Defendants.

CIVIL ACTION NO.: 5:15-cv-25

## ORDER and REPORT AND RECOMMENDATION

Plaintiff, who is currently housed at Ware State Prison in Reidsville, Georgia, submitted a Complaint in the above captioned action pursuant to 42 U.S.C. § 1983 contesting certain conditions of his confinement. (Doc. 1.) The Court has conducted the requisite frivolity review of that Complaint. I **RECOMMEND** that the Court **DISMISS** Plaintiff's Complaint in its entirety for failure to state a claim. I further recommend that the Court **DENY** Plaintiff leave to appeal in forma pauperis.[1]

---

[1] The Court notes that the Clerk of Court has docketed a Notice of Voluntary Dismissal in this case. (Doc. 24.) However, that pleading pertains to another action Plaintiff filed in the Northern District of Georgia which is in the process of being transferred to this District. Accordingly, that pleading has been erroneously entered in the present case. The Clerk of Court is **DIRECTED** to remove the Notice of Voluntary Dismissal, (doc. 24), from this case as it does not reference this case and has no pertinence to this case.

## BACKGROUND[2]

Plaintiff originally filed this action on April 3, 2015, against two Defendants: Defendant Corrections Officer Rowell and Defendant Corrections Officer Farnsworth. (Doc. 1.) Plaintiff's claims stem from an attack he suffered at the hands of other inmates on the night of February 10, 2015 at Ware State Prison. (Id. at p. 6–7.)

At approximately 9:30 p.m., Defendants Rowell and Farnsworth escorted Plaintiff from the showers to his assigned cell. (Id. at p. 6.) Plaintiff was handcuffed at the time. Id. When Plaintiff returned to his cell, inmate Tyler Grogan was in the cell with a shirt tied around his face and homemade knife in his hand. Id. Inmate Grogan stabbed Plaintiff sixteen times while Plaintiff was in handcuffs. Id. As a result of the attack, Plaintiff spent two days in the medical unit.

Plaintiff alleges that Defendants Farnsworth and Rowell's lapses in safety measures prior to the attack failed to protect him from the attack. Id. Plaintiff states that Farnsworth and Rowell "left the latch (slide bolt) off inmate Tyler Grogan['s cell] door during [Grogan's] return from the shower. This allowed [Grogan] to pop his door." Id. Plaintiff faults these two Defendants for failing to check Grogan's door and lock mechanism upon placing Grogan into his cell. Id.

On August 11, 2015, Plaintiff amended his Complaint. (Doc. 14.) Therein, he reasserted the claims laid out above against Defendants Rowell and Farnsworth. (Id. at p. 2.) In addition, he added claims against Defendant Warden Tom Gramiak and Defendant Unit Manager Nathan Brooks. He alleged that Defendant Warden Gramiak failed to properly train officers in the Tier II Housing Unit and that Defendant Unit Manager Brooks failed to supervise the officers. Id.

---

[2] The below recited facts are taken from Plaintiff's Complaint and are accepted as true, as they must be at this stage.

Specifically, Plaintiff maintains that Gramiak and Brooks failed to ensure that officers are properly trained on procedures for the Tier II housing unit and that problems with inmates getting out of their cell are a "long standing issue." (Id. at p. 4.)

Additionally, Plaintiff made more specific allegations regarding the incident. (Id. at p. 3–4.) Plaintiff alleges that after placing Inmate Grogan in the shower, Officer Rowell did not lock the dead bolt on the shower door. (Id. at p. 3.) Officer Rowell then left his post and went into the control room. Id. Inmate Grogan left his shower, went to his cell and stuffed tissue in the cell door and locking mechanism. Rowell and Farnsworth then caught Inmate Grogan attempting to reenter the shower area. Id. The officers then escorted Inmate Grogan back to his cell but did not check the lock on Grogan's cell. Id. Defendants Rowell and Farnsworth then escorted Plaintiff to his cell. Id. Officer Rowell again left his post and went into the control room. Id. Inmate Grogan used a torn piece of sheet to pop open his cell door. Id. When Plaintiff returned to his cell from the shower, Inmate Grogan was in Plaintiff's cell and attacked him. Id.

Plaintiff alleges that all of the incidents described in his Complaint and Amended Complaint were captured by the prison's surveillance camera. (Id. at p. 4.) According to Plaintiff, Defendants Rowell and Farnsworth violated standard operating procedures by failing to make certain that the inmates' doors were secured properly. Id. Plaintiff claims that the officers' lapse in this regard is due at least in part to their failure to receive proper training on Tier II standard operating procedures. Id. Inmates in the Tier II unit are considered to pose a threat to the "welfare of the institution." Id. Plaintiff further states that half of his dormitory at the time of the incident were affiliated with the "notorious street gang, Bloods." Id. He contends that

Grogan is a Bloods member and his placement in the Tier II program lockdown unit was due to his previous stabbing of another prisoner. Id.

## STANDARD OF REVIEW

Plaintiff seeks to bring this action *in forma pauperis* under 42 U.S.C. § 1983. Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets and shows an inability to pay the filing fee and also includes a statement of the nature of the action which shows that he is entitled to redress. Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous or malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii). Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity. Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous or malicious, or fails to state a claim upon which relief may be granted or which seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

When reviewing a Complaint on an application to proceed *in forma pauperis*, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances). Further, a claim is frivolous under Section 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'" Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys.") (emphasis omitted) (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

**DISCUSSION**

**I.    Section 1983 Official Capacity Claims**

Plaintiff cannot sustain a Section 1983 claim against Defendants in their official capacities. States are immune from private suits pursuant to the Eleventh Amendment and traditional principles of state sovereignty. Alden v. Maine, 527 U.S. 706, 712–13 (1999). Section 1983 does not abrogate the well-established immunities of a state from suit without its consent. Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989). Because a lawsuit against a state officer in his official capacity is "no different from a suit against the [s]tate itself," such a defendant is immune from suit under Section 1983. Id. at 71. Here, the State of Georgia would be the real party in interest in a suit against Defendants in their official capacities as officers at a state penal institution. Accordingly, the Eleventh Amendment immunizes these actors from suit in their official capacities. See Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989). Absent a waiver of that immunity, Plaintiff cannot sustain any constitutional claims against Defendants in their official capacities, and these claims should be **DISMISSED**.

**II.   Section 1983 Supervisory Liability Claims**

In Section 1983 actions, liability must be based on something more than a theory of respondeat superior. Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009); Braddy v. Fla. Dep't of Labor & Employment Sec., 133 F.3d 797, 801 (11th Cir. 1998). A supervisor may be liable only through personal participation in the alleged constitutional violation or when there is a causal connection between the supervisor's conduct and the alleged violations. Id. at 802. "To state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts

6

supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct." Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011). "In short, the standard by which a supervisor is held liable in his individual capacity for the actions of a subordinate is extremely rigorous." Keith v. DeKalb Cnty., Ga., 749 F.3d 1034, 1048 (11th Cir.2014) (citation and internal quotation marks omitted). Plaintiff does not allege that Defendants Gramiak and Brooks personally participated in any violation of his constitutional rights.

Rather, Plaintiff claims that Gramiak and Brooks failed to properly train officers in the Tier II unit. This theory implicates a different, albeit very similar, rule: "under § 1983, a supervisor can be held liable for failing to train his or her employees only where the failure to train amounts to deliberate indifference to the rights of persons with whom the officers come into contact." Keith, 749 F.3d at 1052 (alteration, citation, and internal quotation marks omitted). "Failure to train can amount to deliberate indifference when the need for more or different training is obvious, . . . such as when there exists a history of abuse by subordinates that has put the supervisor on notice of the need for corrective measures, . . . and when the failure to train is likely to result in the violation of a constitutional right." McDaniel v. Yearwood, No. 2:11–CV–00165–RWS, 2012 WL 526078, at *15 (N.D. Ga. Feb. 16, 2012) (quoting Belcher v. City of Foley, 30 F.3d 1390, 1397–98 (11th Cir.1994)). "Thus, a plaintiff alleging a constitutional violation premised on a failure to train must demonstrate that the supervisor had 'actual or constructive notice that a particular omission in their training program causes [his or her] employees to violate citizens' constitutional rights,' and that armed with that knowledge the

supervisor chose to retain that training program." Keith, 749 F.3d at 1052 (quoting Connick v. Thompson, 563 U.S. 51, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011)).

Even when construed liberally and accepted as true, Plaintiff's allegations do not state plausible claims against Defendants Gramiak and Brooks. As an initial matter, and as set forth more fully below, the Court does not find that Plaintiff has stated plausible claims that officers under Gramiak and Brooks' supervision violated Plaintiff's constitutional rights. Moreover, Plaintiff has only made the conclusory allegation that the problem with inmates getting out of their cells is a "long standing issue." This is simply not a sufficient allegation to plausibly establish that Gramiak and Brooks had actual or constructive notice that a particular omission in their training program caused employees to violate others' constitutional rights. Thus, the Court should **DISMISS** all federal claims against Defendants Gramiak and Brooks.

### III. Eighth Amendment Claims for Failure to Protect

In order to state a claim for relief under Section 1983, Plaintiff must satisfy two elements. First, he must allege that an act or omission deprived him "of some right, privilege, or immunity secured by the Constitution or laws of the United States." Hale v. Tallapoosa Cty., 50 F.3d 1579, 1582 (11th Cir. 1995). Second, Plaintiff must allege that the act or omission was committed by "a person acting under color of state law." Id.

The Eighth Amendment imposes duties on prison officials including the duty to take reasonable measures to ensure the safety of inmates. Farmer v. Brennan, 511 U.S. 825, 828 (1994). This right to safety is violated when prison officials show a deliberate indifference to a substantial risk of serious harm. Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003) (citing Farmer, 511 U.S. at 828). In order to prevail on such a claim, the plaintiff must establish the following: (1) there was a substantial risk of serious harm to him; (2) defendant showed a

deliberate indifference to this risk; and (3) there is a causal connection between the defendant's acts or omissions and the alleged constitutional deprivation. Id.

Plaintiff's allegations center not on a substantial risk of harm to Plaintiff much less a disregard of that risk but instead on Defendants' alleged general failure to perform their duties. "To be deliberately indifferent a prison official must know of and disregard 'an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Purcell, 400 F.3d at 1319–20). Whether a substantial risk of serious harm exists so that the Eighth Amendment might be violated involves a legal rule that takes form through its application to facts. However, "simple negligence is not actionable under § 1983, and a plaintiff must allege a conscious or callous indifference to a prisoner's rights." Smith, 368 F. App'x at 14. In other words, "to find deliberate indifference on the part of a prison official, a plaintiff inmate must show: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." Thomas v. Bryant, 614 F.3d 1288, 1312 (11th Cir. 2010).

Prison officials are not held liable for every attack by one inmate upon another, Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986), nor are they guarantors of a prisoner's safety. Popham v. City of Talladega, 908 F.2d 1561, 1564 (11th Cir. 1990). Rather, a prison official must be faced with a known risk of injury that rises to the level of a "strong likelihood rather than a mere possibility" before his failure to protect an inmate can be said to constitute deliberate indifference. Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990).

Like any deliberate indifference claim, a plaintiff must satisfy both an objective and a subjective inquiry to establish a failure to protect claim. Chandler v. Crosby, 379 F.3d 1278,

9

1289–90 (11th Cir. 2004). Under the objective component, a plaintiff must prove the condition he complains of is sufficiently serious to violate the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 8 (1992). As for the subjective component, "the prisoner must prove that the prison official acted with 'deliberate indifference.'" Miller v. King, 384 F.3d 1248, 1260-61 (11th Cir. 2004) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). To prove deliberate indifference, the prisoner must show that prison officials "'acted with a sufficiently culpable state of mind'" with regard to the serious prison condition at issue. Id. (quoting Chandler, 379 F.3d at 1289–90).

"It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment[ ] Clause." McCoy v. Webster, 47 F.3d 404, 408 (11th Cir.1995). Furthermore, "[t]o be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." Id. (alteration in original) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986). In other words, "[m]erely negligent failure to protect an inmate from attack does not justify liability under § 1983." Stuckey v. Thompson, No. CV405–216, 2007 WL 1035134, *5 (S.D. Ga. Mar.29, 2007) (quoting Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir.1990)).

Plaintiff has not made any allegation that Inmate Grogan posed any risk to Plaintiff's safety prior to the February 10, 2015 incident or that Defendants were aware of any risk to Plaintiff's safety—from Inmate Grogan or any other source—prior to the attack. A review of Plaintiff's Complaint fails to reveal any allegation indicating that Defendants were subjectively aware of any objective risk to Plaintiff's safety prior to the attack. See Thomas, 614 F.3d at 1312, supra. Plaintiff alleges that Inmate Grogan was a member of a gang and had a history of violence. However, allegations of a jail official's generalized awareness that someone is "'a

problem inmate' with a well-documented history of prison disobedience and [is] prone to violence'" "is not enough to show [his] subjective awareness that the inmate poses a substantial risk of serious harm" to other inmates. Gross v. White, 340 F. App'x 527, 531 (11th Cir. 2009) (first alteration in original) (quoting Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003)). Additionally, while Defendants' violations of standard operating procedures and failure to check to be certain that all cells were locked may constitute negligence, they do not support deliberate indifference claims under the Eighth Amendment. See Coleman v. Terry, No. 5:11-CV-496-MTT-MSH, 2012 WL 6216749, at *4 (M.D. Ga. Nov. 20, 2012) report and recommendation adopted, No. 5:11-CV-496 MTT, 2012 WL 6212804 (M.D. Ga. Dec. 13, 2012) (violation of prison's standard operating procedure for officers to hold onto inmates when they are handcuffed and going down the stairs does not allege deliberate indifference but instead alleges negligence at best).

Accordingly, Plaintiff has failed to state sufficient allegations that Defendants committed constitutional violations with their acts and omissions prior to the attack on February 10, 2015. Thus, Plaintiff's Eight Amendment claims based on a theory of failure to protect should be **DISMISSED**.

## IV. State Law Claims

Plaintiff has arguably asserted pendent state claims that defendants breached a duty owed to him by negligently failing to protect him and keep him free from harm.[3]

Suit against these Defendants in their official capacities is the same as a suit against the State of Georgia. Again, Georgia is immune from private suits pursuant to the Eleventh Amendment and traditional principles of state sovereignty. Alden v. Maine, 527 U.S. 706, 712–

---

[3] This Court can consider these claims under the supplemental jurisdiction of 28 U.SC. 1367 as they arise from the same case and controversy as Plaintiff's federal claims.

13 (1999). Further, "[p]ursuant to [Georgia's] state constitution, sovereign immunity insulates the state and its departments and agencies from liability except to the extent that the legislature enacts a specific waiver." Southerland v. Ga. Dept. of Corrections, 666 S.E.2d 383, 385 (Ga. App. 2008); Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e). The Georgia Tort Claims Act ("GTCA") provides that the "state waives its sovereign immunity for the torts of state officers and employees while acting within the scope of their official duties or employment." O.C.G.A. § 50-21-23(a). However, the GTCA also provides thirteen categories of losses for which the state has not waived sovereign immunity. O.C.G.A. § 50-21-24. These exceptions include losses arising from assault and battery. O.C.G.A. § 50-21-24(7). "This exception has been interpreted to mean that 'where a loss results from assault or battery, there is no waiver of sovereign immunity, even though a private individual or entity would be liable under like circumstances.'" Southerland, 666 S.E.2d at 385 (quoting Dept. of Human Resources v. Coley, 544 S.E.2d 165, 167 (Ga. App. 2000)).

In Southerland, the mother of a deceased inmate brought state law claims against the Department of Corrections for its officers' failure to protect her son from a fatal attack by another inmate. 666 S.E.2d at 384. The Georgia Court of Appeals affirmed the trial court's dismissal of these claims, because, due to the assault and battery exception to the GTCA, the state had not waived its sovereign immunity for the mother's claims. Southerland, 666 S.E.2d at 385. In other words, even though the assault and battery was inflicted by someone other than the state officer or employee, because the act causing the underlying loss constituted a battery (i.e., the beating of the decedent by a fellow inmate), O.C.G.A. § 50-21-24(7)'s exception to the waiver of sovereign immunity applied. Id.

The decision in Southerland is controlling in the case at hand where Plaintiff seeks to assert state law claims against state actors for losses that were caused by an assault and battery. Consequently, Plaintiffs' state law claims against Defendants in their official capacities are barred by sovereign immunity.

Plaintiff also sues Defendants in their individual capacity. Sovereign immunity "does not protect state employees sued in their individual capacity for employment-related acts." Jackson v. Ga. Dept. of Transp., 16 F.3d 1573, 1575 (11th Cir. 1994). However, the GTCA provides, "[t]his article constitutes the exclusive remedy for any tort committed by a state officer or employee. A state officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefor." O.C.G.A. § 50-21-25(a). This state law exemption from individual liability for state officers and employees has been construed broadly. See Romano v. Ga. Dep't of Corr., 693 S.E.2d 521, 525 (Ga. Ct. App. 2010) (dismissing state law conversion claims against correction officers); Davis v. Standifer, 621 S.E.2d 852 (Ga. Ct. App. 2005). "Since there is no exemption in [O.C.G.A.] § 50-21-25 for acts motivated by malice or intent to injure, the presence of such motivation has no effect on the immunity granted by this statute." Ridley v. Johns, 552 S.E.2d 853, 854 (Ga. 2001). "Where the state employee acts in the prosecution and within the scope of his official duties, intentional wrongful conduct comes within and remains within the scope of employment." Romano, 693 S.E.2d at 525 (quoting Ford v. Caffrey, 666 S.E.2d 623, 626 (Ga. Ct. App. 2008)); see also Minor v. Barwick, 590 S.E.2d 754, 762–63 (Ga. Ct. App. 2003) (official immunity under O.C.G.A. § 50-21-25(a) applies even when a state correctional officer acted with malice and intent to injure).

Plaintiff sues Defendants for actions that were taken within the scope of their employment as state correctional officers. Consequently, under O.C.G.A. § 50-21-25(a), Plaintiff cannot hold Defendants individually liable under state law.

In sum, Plaintiff fails to assert viable state law claims against Defendants in their individual or official capacities. Consequently, the Court should **DISMISS** all of Plaintiff's state law claims.

## V. Leave to Appeal *In Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[4] Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not take in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Or, stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

---

[4] A certificate of appealablity is not required in this Section 1983 action.

Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, *in forma pauperis* status on appeal should be **DENIED**.

## CONCLUSION

For the numerous reasons set forth above, I **RECOMMEND** that this action be **DISMISSED** for failure to state a claim and that Plaintiff be **DENIED** leave to appeal *in forma pauperis*.

Any party seeking to object to this Report and Recommendation is **ORDERED** to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final

judgment entered by or at the direction of a District Judge.  The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation on Plaintiff

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 16th day of December, 2015.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA